(No. 99136.—

THE VILLAGE OF CHATHAM, ILLINOIS, an Illinois
Municipal Organization, Appellee, v. THE
COUNTY OF SANGAMON, ILLINOIS, an Illinois
Body Corporate and Politic, Appellant.

*Opinion filed September 22, 2005.*

John P. Schmidt, State's Attorney, and J. William Roberts, D. Bradley Blodgett and Russell L. Reed, Special Assistant State's Attorneys, of Hinshaw & Culbertson, L.L.P., all of Springfield, for appellant.

John M. Myers and Alex B. Rabin, of Rabin, Myers, Hanken & Durr, P.C., of Springfield, for appellee.

Roger Huebner, of Springfield, for *amicus curiae* Illinois Municipal League.

JUSTICE FREEMAN delivered the opinion of the court:

At issue is whether the Village of Chatham, Illinois, or the County of Sangamon, Illinois, has zoning and building code jurisdiction over unincorporated lands that are subject to annexation agreements between the property owners and the Village. The circuit court of Sangamon County granted summary judgment in favor of the Village, finding that the Village's ordinances apply. Further, the circuit court rejected the County's claim that the provision of the Illinois Municipal Code (65 ILCS 5/11—15.1—2.1 (West 2002)) which authorizes application of the Village's ordinances is unconstitutional. A divided appellate court affirmed. 351 Ill. App. 3d 889. We granted the County's petition for leave to appeal (177 Ill. 2d R. 315(a)). For the reasons that follow, we affirm the judgment of the appellate court.

## BACKGROUND

Various persons who owned property in unincorpo-

rated Sangamon County reached agreements with the Village for the future annexation of their properties. The property owners and associated contractors obtained permits from the Village and began construction upon the properties. On March 8, 2002, the County sent letters to the property owners and the Village regarding the construction, asserting building code jurisdiction over the properties. In letters to the property owners, the County's zoning and building administrator noted that the County had not issued construction permits to the owners and requested that the owners contact the County as soon as possible. In the letter to the Village, the County stated that it had noticed construction taking place in areas "pre-annexed" to the Village, where the property owners had not obtained building permits from the County. The County asked the Village to refer to the County all applications for building permits in unincorporated areas and all questions regarding zoning of unincorporated areas.

In response, the Village filed an action for declaratory judgment (735 ILCS 5/2—701 (West 2002)). The Village sought a determination that the Village, and not the County, has zoning and building code jurisdiction in areas subject to annexation agreements with the Village, and an injunction preventing the County from making demands on contractors and interfering with the Village's annexation agreements. The Village also asked the court to establish an escrow account into which contractors could deposit the County building permit fees, with the proceeds to be paid to the County if the County prevailed or refunded to the contractors if the Village prevailed. Subsequently, the Village and County stipulated that, during the pendency of the lawsuit, owners, contractors, and developers would obtain County building permits and pay appropriate fees as required by County resolutions. The Village would also issue ap-

propriate building permits to the owners, contractors, and developers, but would not charge any additional building permit fees. The funds collected by the County were to be placed in an escrow fund, administered by the county clerk of Sangamon County.[1] Lastly, both the Village and the County had the right to inspect the construction sites.

In its answer to the complaint, the County admitted the existence of a controversy between the Village and the County as to the applicability of section 11—15.1—2.1 of the Municipal Code (65 ILCS 5/11—15.1—2.1 (West 2002)), and demanded strict proof of the annexation agreements between the property owners and the Village. As an affirmative defense, the County claimed that section 11—15.1—2.1 contained an arbitrary classification and violated the special legislation provisions of article IV, section 13, of the Illinois Constitution (Ill. Const. 1970, art. IV, § 13). Lastly, the County counterclaimed for declaratory judgment, alleging that it had zoning, building code and Plat Act jurisdiction (765 ILCS 205/1 *et seq.* (West 2002)) over the unincorporated lands by operation of law. In a subsequent amendment, the County claimed that division 15.1 of the Municipal Code, if interpreted in the fashion advocated by the Village, is an invalid exercise of the police power because the legislation does not bear a reasonable relationship to public health, safety, morals and general welfare or convenience. Yet later, the County abandoned the Plat Act portion of its counterclaim.

Both the Village and the County moved for summary judgment. In support of its motion, the County submitted a map to the court detailing the properties subject to annexation agreements and the corporate limits of the Village. Susan Poludniak, a staff member of the

---

[1]At the conclusion of the proceedings in the circuit court, the balance in the escrow account stood at $17,836.99.

Springfield-Sangamon County regional county planning commission, caused the map to be prepared, and stated in an affidavit that the map "updates the corporate limits of the Village of Chatham over and above those maps produced by the Village of Chatham, including additional information received about newer annexation agreements." The circuit court granted the Village's motion for summary judgment and denied the County's motion. The court found that division 15.1 of the Municipal Code grants zoning and building code jurisdiction to municipalities over lands subject to annexation agreements. Further, the court upheld section 11—15.1—2.1 and division 15.1 against the County's special legislation challenge. The court found that the County "failed to meet its burden in establishing that the 1993 amendments made by the legislature to Division 15.1 are not rationally related to a legitimate State interest and that they are clearly unreasonable and palpably arbitrary."

A divided appellate court affirmed the grant of summary judgment in favor of the Village. The court first determined that section 5—1063 of the Counties Code (55 ILCS 5/5—1063 (West 2002)), which grants counties building code power over buildings located outside a municipality's corporate limits, and section 11—13—1 of the Municipal Code (65 ILCS 5/11—13—1 (West 2002)), which provides that a municipality shall not exercise zoning power outside its corporate limits if the county has adopted zoning ordinances, are not controlling where the lands at issue are subject to an annexation agreement with the municipality. 351 Ill. App. 3d at 893-98. The court reasoned:

"By providing 'property that is the subject of an annexation agreement *** is subject to the ordinances, control and jurisdiction of the annexing municipality in all respects the same as property that lies within the annexing municipality's corporate limits' *** (65 ILCS 5/11—15.1—2.1(a) (West 2002)), the legislature manifested its intent to

make this general provision controlling in cases where the land is subject to an annexation agreement." 351 Ill. App. 3d at 897.

Next, the appellate court rejected the County's special legislation challenge, finding that the County failed to meet its burden of showing that the classification contained in section 11—15.1—2.1 is arbitrary and unreasonable. 351 Ill. App. 3d at 901. The court also rejected the County's claim that the legislation is an invalid use of police powers by the legislature. 351 Ill. App. 3d at 901-02. Lastly, the court rejected the County's argument that there was a genuine issue of material fact which made entry of summary judgment in favor of the Village inappropriate. The court noted that the County had admitted a dispute with the Village over zoning and building code jurisdiction and provided the circuit court with a map showing the location of some of the disputed lands. 351 Ill. App. 3d at 902-03. The court concluded that entry of a judgment declaring that the Village's ordinances applied to the disputed lands was proper and would terminate the controversy between the Village and the County. 351 Ill. App. 3d at 903.

Justice Myerscough dissented. Like the majority, she noted the apparent conflict between section 11—15.1—2 of the Municipal Code, section 11—13—1 of the Municipal Code and section 5—1063 of the Counties Code. She disagreed, however, with the majority's conclusion that section 11—15.1—2 prevails over the other statutes. She would apply the principle of *in pari materia* to reconcile the statutes and would hold that a municipality's zoning power only becomes effective when the property is actually annexed. 351 Ill. App. 3d at 904-07.

We granted the County leave to appeal, and allowed the Illinois Municipal League leave to file an *amicus curiae* brief in support of the Village. We now affirm the judgment of the appellate court.

## ANALYSIS

As noted above, the circuit court entered summary judgment in favor of the Village in this action for declaratory judgment. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2002). In the present case, the correctness of the circuit court's ruling turns on its determination that section 11—15.1—2.1 does not violate the strictures of our constitution, and on the court's construction of several provisions of the Municipal Code and the Counties Code. Review is *de novo*. *Flynn v. Ryan*, 199 Ill. 2d 430, 436 (2002); *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 551 (1999).

### I. Division 15.1

An understanding of the issues at bar requires discussion of the history of division 15.1. We detail the legislative enactment and certain amendments thereto, and discuss case law interpreting the enactment.

As originally enacted, section 11—15.1—1 of division 15.1 provided:

"The corporate authorities of any municipality may enter into an agreement with one or more of the owners of record of land in any territory which may be annexed to such municipality as provided in Article 7 such agreement to be valid and binding for a period of not to exceed 5 years from the date of execution thereof." Ill. Rev. Stat. 1963, ch. 24, par. 11—15.1—1.[2]

Section 11—15.1—2 governed the contents and scope of the annexation agreements:

"Any such agreement may provide for the following as it relates to the land which is the subject of the agreement:

---

[2]The time period has since been lengthened to 20 years. See 65 ILCS 5/11—15.1—1 (West 2002).

(a) The annexation of such territory to the municipality, subject to the provisions of Article 7.

(b) The continuation in effect, or amendment, or continuation in effect as amended, of any ordinance relating to subdivision controls, zoning, official plan, and building, housing and related restrictions; provided, however, that any public hearing required by law to be held before the adoption of any ordinance amendment provided in such agreement shall be held prior to the execution of the agreement, and all ordinance amendments provided in such agreement shall be enacted according to law.

(c) A limitation upon increases in permit fees required by the municipality.

(d) Contributions of either land or monies, or both, to the municipality and to other municipal corporations having jurisdiction over all or part of such land.

(e) The granting of utility franchises for such land.

(f) Any other matter not inconsistent with the provisions of this Code, nor forbidden by law.

Any action taken by the corporate authorities during the period such agreement is in effect, which, if it applied to the land which is the subject of the agreement, would be a breach of such agreement, shall not apply to such land without an amendment of such agreement." Ill. Rev. Stat. 1963, ch. 24, par. 11—15.1—2.

Division 15.1 also delineated the procedures to be followed in entering upon an annexation agreement (Ill. Rev. Stat. 1963, ch. 24, par. 11—15.1—3) and the methods of enforcement of such an agreement (Ill. Rev. Stat. 1963, ch. 24, par. 11—15.1—4).

In *People ex rel. County of St. Clair v. City of Belleville,* 84 Ill. 2d 1 (1981), this court considered the validity of four ordinances adopted by the council of the City of Belleville. The first ordinance, number 3390, purported to annex a railroad right-of-way partly contiguous and partly noncontiguous to the city. The second ordinance, number 3391, purported to annex property noncontiguous to the city. The third ordinance, number 3392, adopted an annexation agreement between the city

and the Catholic Diocese of Belleville, as owner of three tracts totaling 90 acres which were noncontiguous to the city. Pursuant to the annexation agreement, the property was to be the site of a Venture store. The city agreed to extend its sanitary sewerage system to the site, to authorize the owner of the site to have a road constructed near the site, and to authorize the owner of the site to have Illinois Route 13 and U.S. Route 460 improved in order to provide access from those roads to the site. The fourth ordinance, number 3393, purported to annex the 90 acres of the Catholic Diocese.

On appeal from the circuit court's ruling upholding the validity of the ordinances, the county argued that section 7—1—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—8) required that territory be contiguous prior to or at the time the petitions for annexation were filed before a municipality could pass annexation ordinances. For its part, the city argued that while section 7—1—3 (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—3) might well require that the territory be contiguous when the petitions were filed, section 7—1—8, the section at issue, provided that the territory need not be contiguous until the annexation ordinance was actually passed. The court rejected the city's argument and invalidated ordinances 3391 and 3393, the two ordinances which purported to annex noncontiguous property. The court determined section 7—1—8 required that the territory sought to be annexed be contiguous at the time the petition for annexation was filed. A municipality desirous of annexing several parcels, only one of which was contiguous to the municipality, had to annex each parcel at separate times. The court, however, distinguished ordinance 3392, the ordinance which authorized an annexation agreement but did not attempt to annex the property: "Ordinance No. 3392, which adopted the agreement between the city and the diocese, is not affected by

this conclusion. Since that ordinance simply adopts the agreement between the city and the diocese, but does not purport to annex any property, we think its validity is not in serious question here." *City of Belleville*, 84 Ill. 2d at 12. Lastly, the court invalidated ordinance 3390 because the notice and accuracy requirements of the annexation statute had not been met.

In *Village of Lisle v. Action Outdoor Advertising Co.*, 188 Ill. App. 3d 751 (1989), the village brought an action seeking to enjoin the defendants from constructing an outdoor advertising sign, pursuant to a building and use permit from Du Page County, on the Smiths' property. The village based the action upon an annexation agreement between the village and the Smiths which provided for the future annexation and zoning of the Smiths' property when the property became contiguous to the village. A pertinent provision of the annexation agreement provided that the Smiths would install or otherwise construct all landscaping, lighting, signage, utilities, structures, or improvements of any kind upon the property in accordance with plans attached to the agreement and determined to have been in accordance with the village's code. The trial court ruled that the annexation agreement was valid but unenforceable because the Smiths' property was not contiguous to the village.

The appellate court affirmed. Initially, the appellate court observed that section 11—15.1—1 of the Municipal Code "provides the statutory authority for corporate authorities to enter into annexation agreements. Pursuant to section 11—15.1—1, '[t]he corporate authorities of any municipality may enter into an agreement with one or more of the owner of record of land in any territory *which may be annexed to such municipality as provided in Article 7.*' " (Emphasis in original.) *Lisle*, 188 Ill. App. 3d at 755. The court also noted that article 7 "defines 'territory which may be annexed' as '[a]ny territory

which is not within the corporate limits of any municipality *but which is contiguous to a municipality.*' " (Emphasis in original.) *Lisle*, 188 Ill. App. 3d at 755. The Smiths' property not being contiguous to the village, the court observed that the property could not be annexed pursuant to article 7. Further, "[s]ince section 11—15.1—1 of the Code [citation] only authorizes municipalities to enter into annexation agreements for property 'which may be annexed to such municipality as provided in Article 7,' only an agreement regarding contiguous property would be valid." *Lisle*, 188 Ill. App. 3d at 755.

The appellate court also believed that the village's annexation agreement countermanded the purpose of the Municipal Code. The court explained:

"[T]he validity of an annexation agreement that purports to allow a municipal authority to exercise its police powers over a noncontiguous tract of property fails when examined in light of the purpose behind the contiguity requirement. The fundamental notion of a municipal corporation is that of unity and continuity, not separated or segregated areas. [Citation.] This necessity for unity of purpose and facilities forms the very basis for the requirement of contiguity. [Citation.] The purpose of the contiguity requirement is to permit the *natural and gradual extension of municipal boundaries to areas which adjoin one another in a reasonably substantial physical sense.*" (Emphasis in original.) *Lisle*, 188 Ill. App. 3d at 755.

The court concluded:

"By allowing the Village in the instant action to enforce its ordinances on a property owner through an annexation agreement where it could not do so through actual annexation would permit the Village to do indirectly what it is prohibited by statute from doing directly. In other words, while the Village cannot annex the Smiths' property because it is not contiguous to the Village, it nonetheless seeks to exercise the same control under an annexation agreement which contemplates future contiguity. It is axiomatic that a party cannot circumvent the purpose of a statute by doing indirectly what it cannot do directly. [Cita-

tion.] Accordingly, we hold that the annexation agreement in the instant action is *invalid* and unenforceable as the property which is subject to the agreement is not contiguous to the Village and, as such, is not a proper object of annexation." (Emphasis in original.) *Lisle*, 188 Ill. App. 3d at 756.

The appellate court purported to distinguish this court's opinion in *City of Belleville*, 84 Ill. 2d 1, claiming that the validity of an annexation agreement was not directly at issue.

The legislature reacted swiftly to the appellate court opinion in *Lisle*, amending section 11—15.1—1 as follows:

"The corporate authorities of any municipality may enter into an annexation agreement with one or more of the owners of record of land in unincorporated territory. That land may be annexed to the municipality in the manner provided in Article 7 at the time the land is or becomes contiguous to the municipality. The agreement shall be valid and binding for a period of not to exceed 20 years from the date of its execution.

Property that is the subject of an annexation agreement adopted under this Section is subject to the ordinances, control, and jurisdiction of the municipality in all respects the same as property owned by the municipality that lies within its corporate limits.

Lack of contiguity to the municipality of property that is the subject of an annexation agreement does not affect the validity of the agreement whether approved by the corporate authorities before or after the effective date of this amendatory Act of 1990.

This amendatory Act of 1990 is declarative of existing law and does not change the substantive operation of this Section." 65 ILCS 5/11—15.1—1 (West 1992).

In 1993, the legislature further amended division 15.1 by moving the second paragraph of section 11—15.1—1 to a new section and adding thereto a provision mandating contiguity in certain counties (65 ILCS 5/11—15.1—2.1 (West 1994)). The new section provides:

"Annexation agreement; municipal jurisdiction.

(a) Property that is the subject of an annexation agreement adopted under this Division is subject to the ordinances, control, and jurisdiction of the annexing municipality in all respects the same as property that lies within the annexing municipality's corporate limits.

(b) This Section shall not apply in (i) a county with a population of more than 3,000,000, (ii) in a county that borders a county with a population of more than 3,000,000 or (iii) a county with a population of more than 246,000 according to the 1990 federal census and bordered by the Mississippi River, unless the parties to the annexation agreement have, at the time the agreement is signed, ownership or control of all property that would make the property that is the subject of the agreement contiguous to the annexing municipality, in which case the property that is the subject of the annexation agreement is subject to the ordinances, control, and jurisdiction of the municipality in all respects the same as property owned by the municipality that lies within its corporate limits." 65 ILCS 5/11—15.1—2.1 (West 1994).

The legislature has amended division 15.1 two more times. It modified section 11—15.1—4 to add a limitation period for lawsuits to enforce and compel performance of annexation agreements. 65 ILCS 5/11—15.1—4 (West 1996). Also, it amended section 11—15.1—2 to provide that a municipality could abate property taxes as part of an annexation agreement, and that contributions of land or monies to a municipality or other unit of local government would survive the expiration date of the annexation agreement. 65 ILCS 5/11—15.1—2 (West 1998). Section 11—15.1—2.1, however, remained the same. It is this section of division 15.1 that the County finds objectionable.

## II. Constitutional Issues

### A. *Special Legislation*

In this court, the County argues that section 11—15.1—2.1 of the Municipal Code violates the special

legislation clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 13), because it contains an arbitrary classification and confers on certain counties special rights and privileges that are not available to other counties. Initially, we note that all statutes are presumed to be constitutional. *Flynn*, 199 Ill. 2d at 436; *People v. Sypien*, 198 Ill. 2d 334, 338 (2001). The party challenging the constitutionality of a statute has the burden of rebutting the presumption of validity and clearly establishing a constitutional violation. *Flynn*, 199 Ill. 2d at 436; *Nevitt v. Langfelder*, 157 Ill. 2d 116, 124 (1993). Further, when construing a statute, the court should uphold the statute's validity if reasonably possible. *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 123 (1998).

The special legislation clause of the Illinois Constitution provides:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.

Our constitution thus prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997); *In re Petition of the Village of Vernon Hills*, 168 Ill. 2d 117, 122 (1995).

Like the equal protection guarantee, the special legislation provision of our constitution is intended to prevent arbitrary legislative classifications. *Best*, 179 Ill. 2d at 391. "If there is a reasonable basis for the classification, and it bears a reasonable and proper relation to the purposes of the act and the evil it seeks to remedy, it does not violate the constitutional proscription of special or local laws." *Bridgewater v. Hotz*, 51 Ill. 2d 103, 111 (1972). As the court explained in *People ex rel. County of Du Page v. Smith*, 21 Ill. 2d 572, 577-78 (1961),

"[A] law may be general notwithstanding that it may operate only in a single place where conditions necessary to its operation exist. [Citations.] A law is general not because it embraces all of the governed, but because it may, from its terms, embrace all who occupy a like position to those included. [Citations.] If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such persons or objects. [Citation.] In this regard, it is well settled that an act is not local or special merely because of a legislative classification based upon population [citation] or territorial differences [citation]. Such classifications will be sustained where founded upon a rational difference of situation or condition existing in the objects upon which it rests, and where there is a reasonable basis for the classification in view of the objects and purposes to be accomplished."

Contrarily, a statute will be invalidated if it creates a classification so narrow as to effectively identify a limited number of entities, precluding all others from ever joining the class. Thus, in *People ex rel. Koch v. Rinaker*, 252 Ill. 266 (1911), the court invalidated a statute which provided for the formation of one forest preserve district in a county but did not require the district to include a forest. Once a district was organized in a county, no matter how small the forest it contained or how many acres of forest existed outside the district, no other district could be organized in the same county. And in *Frye v. Partridge*, 82 Ill. 267 (1876), the court invalidated the statute at issue because it was limited in its application to one ferry, located at a definite place. See also *Christen v. County of Winnebago*, 34 Ill. 2d 617 (1966); 2 N. Singer, Sutherland on Statutory Construction § 40:1 (6th ed. 2001).

In the present case, section 11—15.1—2.1 provides that property that is the subject of an annexation agreement is also subject to the ordinances, control, and

jurisdiction of the municipality. This provision, however, does not apply to Cook County, counties bordering Cook County, and counties with a population of more than 246,000 according to the 1990 federal census and bordered by the Mississippi River. In those counties, the municipality's ordinances do not apply unless the parties to the annexation agreement have, at the time the agreement is signed, ownership or control of all property that would make the property that is the subject of the agreement contiguous to the annexing municipality. The County maintains that the statute contains a closed classification because several counties border the Mississippi River but only those with a population of more than 246,000 according to the 1990 census would be able to invoke the contiguity provision. No matter the growth in the population of other counties bordered by the Mississippi River, the enactment will only apply to Madison County and St. Clair County.

The Village maintains this court should not consider the County's special legislation challenge because section 11—15.1—2.1 does not impact the County and, consequently, the County lacks standing to complain of the statute. Standing is a preliminary question in all declaratory judgment actions. *Flynn*, 199 Ill. 2d at 436. We consider the Village's argument first.

The doctrine of standing ensures that issues are raised only by parties with a real interest in the outcome of the controversy. *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 206 (2000). In Illinois, standing is shown by demonstrating some injury to a legally cognizable interest. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988); *Messenger v. Edgar*, 157 Ill. 2d 162, 170 (1993). The claimed injury, whether actual or threatened, must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely

to be prevented or redressed by the grant of the relief requested. *Chicago Teachers Union,* 189 Ill. 2d at 207; *Greer,* 122 Ill. 2d at 492-93. In the context of a declaratory judgment action, "there must be an actual controversy between adverse parties, with the party requesting the declaration possessing some personal claim, status, or right which is capable of being affected by the grant of such relief." *Greer,* 122 Ill. 2d at 493.

In *Underground Contractors Ass'n v. City of Chicago,* 66 Ill. 2d 371, 375-76 (1977), the court further explained the requirements for standing:

> " 'Actual' in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.]
>
> The second, and somewhat related requirement, is that the party seeking the declaration must be 'interested in the controversy.' [Citation.] The word, 'interested' does not mean merely having a curiosity about or a concern for the outcome of the controversy. Rather, the party seeking relief must possess a personal claim, status, or right which is capable of being affected. [Citations.] The dispute must, therefore, touch the legal relations of parties who stand in a position adverse to one another."

Thus, to have standing to bring a declaratory judgment action challenging the validity of a statute, one must have sustained, or be in immediate danger of sustaining, a direct injury as a result of enforcement of the statute. *Flynn,* 199 Ill. 2d at 437; *Messenger,* 157 Ill. 2d at 171.

We agree with the Village that the County does not have standing to challenge the validity of section 11—15.1—2.1. The County does not possess a personal claim,

status or right which is capable of being affected by the relief requested. As noted above, the legislature amended division 15.1 in 1990 to provide that "[p]roperty that is the subject of an annexation agreement *** is subject to the ordinances, control, and jurisdiction of the municipality in all respects the same as property owned by the municipality that lies within its corporate limits." 65 ILCS 5/11—15.1—1 (West 1992). Thus, in 1990, *all counties* in Illinois were affected in the same way by an annexation agreement—that is, the property subject to the annexation agreement *was also subject to the ordinances, control, and jurisdiction of the municipality.* The legislature specifically instructed that the amendment "is declarative of existing law and does not change the substantive operation of this Section." 65 ILCS 5/11—15.1—1 (West 1992).

In 1993, the legislature further amended division 15.1 by moving the provision pertaining to the applicability of the ordinances, control and jurisdiction of the municipality to a new section, and adding thereto the provision mandating contiguity in Cook County, counties that border Cook County, and counties with a population of 246,000 according to the 1990 federal census that are bordered by the Mississippi River. See 65 ILCS 5/11—15.1—2.1 (West 1994). The County is neither a collar county nor a county bordered by the Mississippi River. Thus, the 1993 amendment does not have a direct impact on the County. It is only because the 1993 amendment confers a measure of protection to Cook County, the collar counties, Madison County, and St. Clair County by requiring contiguity *at the time the annexation agreement is signed* that the County claims it has suffered an injury in being denied the same protection.

The County argues that we should invalidate the 1993 amendment because it creates a closed class within the counties bordered by the Mississippi River. Were we

to strike down the 1993 amendment, however, the County would not obtain relief or be impacted in any way. If we were to strike the 1993 amendment in part by deleting subsection (b), the provision mandating contiguity in Cook County, the collar counties, Madison County and St. Clair County, the provision of subsection (a) that "[p]roperty that is the subject of an annexation agreement *** is subject to the ordinances, control, and jurisdiction of the annexing municipality" would apply to all counties, including the County (65 ILCS 5/11—15.1—2.1(a) (West 1994)). See *Myers v. People*, 67 Ill. 503, 508-09 (1873) ("It is a general rule, and one founded in good sense, that, if one part of a statute be unconstitutional, but it stands so independently by itself that it may be rejected, and yet leave that which remains so complete in itself as to be fully capable of execution, then the act should be construed the same as if the void part had never been inserted. Under these rules, we hold that we are at liberty to reject the last section of the act, and then, by the terms of the first section, it will apply to all the county courts in the State").

If we were to strike the 1993 amendment in its entirety, the previous version of the statute, that is, the statute as amended in 1990, would spring back to life. See *Johnkol, Inc. v. License Appeal Comm'n*, 42 Ill. 2d 377, 382 (1969) (" 'The effect of the enactment of an invalid amendment to a statute is to leave the law in force as it existed prior to the adoption of such amendment.' [Citations.] As we have noted, prior to the 1961 amendment, the statute provided that all licensees whose licenses had been revoked were permitted to resume business during the pendency of their administrative appeals. Only that portion of the 1961 amendment to section 5 of the Act which destroyed that equality of treatment is invalidated by our decision. [Citation.] Absent legislative modification, licensees in all municipalities must be

permitted to resume operation during the pendency of an administrative appeal"). The 1990 version of the statute also provided that "[p]roperty that is the subject of an annexation agreement *** is subject to the ordinances, control, and jurisdiction of the municipality." 65 ILCS 5/11—15.1—1 (West 1992).

Moreover, we agree with the legislature's assessment that the 1990 amendment was declarative of the law as it existed prior to the amendment. As discussed above, in *City of Belleville*, 84 Ill. 2d 1, this court *upheld the validity* of an ordinance which adopted an annexation agreement between the City of Belleville and the Catholic Diocese. By the terms of the agreement, the city had agreed to extend its sanitary sewerage system to the *noncontiguous site*, to authorize the owner of the site to have a road constructed near the site, and to authorize the owner of the site to have Illinois Route 13 and U.S. Route 460 improved in order to provide access from those roads to the site. In *Lisle*, 188 Ill. App. 3d at 755, the appellate court purported to distinguish *City of Belleville* and held that a municipality could not enforce its ordinances on a noncontiguous property owner through an annexation agreement. The appellate court erred in its attempt to distinguish *City of Belleville*. The 1990 amendment restored the law as it existed prior to *Lisle*.

It is a fundamental rule of constitutional law that a court will not determine the constitutionality of a provision of a statute that does not affect the parties to the cause under consideration. *Flynn*, 199 Ill. 2d at 438-39; *Chicago Teachers Union*, 189 Ill. 2d at 206. Under all versions of division 15.1, property subject to an annexation agreement within the county would be subject to the municipality's ordinances, control, and jurisdiction. It is thus apparent that striking the later version of the statute would not impact the County in any way. The County has not sustained an injury which is likely to be

redressed by the relief requested and lacks standing to challenge the statute as special legislation.

## B. *Police Power*

The County also maintains that division 15.1 is an invalid exercise of the police power. The County notes that "while lands cannot be annexed to a municipality until they are contiguous to the corporate boundaries of the municipality, the Division permits unlimited power of a municipality to assert zoning and building code and other jurisdiction \*\*\* over lands covered by an agreement that may be many miles and hundreds of miles away from the municipality, thus defeating the sound land use principles of unity and continuity in the extension of corporate jurisdiction." The County argues "the Division will permit a landowner to bargain with unlimited municipalities across the State for the best zoning deal available, even though annexation may never be able to occur as a practical matter, thus permitting municipalities with no valid government interest in the zoning to bargain away the public interest of those legitimately concerned with the zoning of the lands." The County concludes that division 15.1 does not bear a reasonable relationship to public health, safety, morals and general welfare or convenience.

In *City of Carbondale v. Brewster*, 78 Ill. 2d 111, 114-16 (1979), the court outlined the principles we must consider in resolving the County's challenge:

"Recently, the concept of police power in Illinois has been more thoroughly considered.

'The police power is an attribute of sovereignty inherent in every government. It has been reserved to all the States by the constitution of the United States. [Citations.] While it is not without limitation and may not be exercised arbitrarily, the legislatures of the States have broad discretion in the passage of statutes in its exercise. [Citation.] When the legislature has considered a problem and enacted legislation

thereon, the act is presumptively a valid exercise of the power and the burden rests upon the one assailing the statute to show that it is without reasonable basis and entirely arbitrary. [Citations.]' (*Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 123.)

The police power may be exercised to protect the public health, safety, morals, and general welfare or convenience. [Citations.] To be a valid exercise of police power, the legislation must bear a reasonable relationship to one of the foregoing interests which is sought to be protected, and the means adopted must constitute a reasonable method to accomplish such objective. [Citations.] Although the determination of reasonableness is a matter for the court, the legislature has broad discretion to determine not only what the interests of the public welfare require but what measures are necessary to secure such interest. [Citations.] The court will not disturb a police regulation merely where there is room for a difference of opinion as to its wisdom, necessity and expediency. [Citation.] The reasonableness requirement also applies to ordinances passed pursuant to legislative authority."

The court further explained that "a zoning ordinance will be upheld as a proper exercise of the police power if it bears any substantial relationship to the public health, safety, comfort or welfare." *City of Carbondale*, 78 Ill. 2d at 115.

On a prior occasion, this court has considered a constitutional challenge to the validity of division 15.1. In *Meegan v. Village of Tinley Park*, 52 Ill. 2d 354 (1972), an action for *mandamus* commenced in 1971, the plaintiffs asked the trial court to compel the issuance of a building permit pursuant to an annexation agreement entered into in September 1959. As adopted by the legislature in 1963, division 15.1 limited the enforcement of preexisting annexation agreements to five years from the date of execution of the agreement. The plaintiffs maintained that division 15.1 impaired the obligations of a valid and existing contract, in violation of section 10 of

article I of the federal constitution. In affirming the dismissal of the action as time-barred, this court observed:

"The adoption of zoning regulations constitutes an exercise of the police power of the State. [Citations.] The 1963 amendment to the Illinois Municipal Code which added section 11—15.1—1 *et seq.* relating to annexation agreements provides in section 11—15.1—2 that zoning is a permissible subject of such agreements. To the extent that section 11—15.1—5 limits the enforcement of such agreements relating to zoning, as in this case, the legislature is thereby exercising its police power.

We need not here attempt to distinguish between obligations of contract and remedies for breach thereof nor determine into which category the limitations on the enforcement of the agreement fall [citation], because we are here concerned with the exercise of the police power by the State. The contract clause of the Federal constitution does not prohibit the enactment of all laws that may affect or interfere with the free exercise of rights granted by contracts. Such rights are subject to the reasonable and legitimate exercise of the police power by the State. [Citations.] Neither the contract clause nor the due process clause of the Federal constitution has the effect of overriding the power of the State to establish all regulations that are reasonably necessary to secure the health, safety, comfort and general welfare of the community. [Citation.] We conclude, therefore, that the limitation provision of section 11—15.1—5 as applied to this case is not invalid as a violation of the contract clause of the Federal constitution." *Meegan*, 52 Ill. 2d at 357-58.

Also instructive is this court's opinion in *City of Belleville*, 84 Ill. 2d 1. As discussed above, the court invalidated several ordinances which purported to annex property because the statute at issue required contiguity at the time the petitions for annexation were filed.[3] In doing so, the court observed:

---

[3]The statute has since been amended to require that the property be contiguous *at the time of annexation,* rather than at

"We realize that this construction requires a municipality desirous of annexing several parcels, only one of which is contiguous to the municipality, to annex each parcel at separate times. In some situations this requirement may appear cumbersome. We can only conclude that the General Assembly has imposed this limitation to prevent a municipality from conducting a wholesale annexation of successive parcels of property where each parcel, other than the first, is not contiguous to, and is more remote from, the original corporate limits. Since this is peculiarly a legislative judgment, we will not interfere with it." *City of Belleville*, 84 Ill. 2d at 11.

Although the court invalidated the ordinances which purported to annex property, the court upheld the validity of an ordinance which authorized an annexation agreement for *property noncontiguous to the municipality*, but did not attempt to annex the property. *City of Belleville*, 84 Ill. 2d at 12. Thus, the *City of Belleville* court recognized that the legislature has broad discretion to determine what the interests of the public welfare require and what measures are necessary to secure such interest. Also, the court determined that the legislature may authorize an annexation agreement for property which is noncontiguous to a municipality.

In considering the County's challenge, we note that the arguments the County presents reflect the analysis and decision of the appellate court in *Lisle*, 188 Ill. App. 3d 751. We have discussed the appellate court's opinion at length and noted that the court was in error. We have also outlined the legislature's reaction to the *Lisle* opinion. We are satisfied that the legislature had the opportunity to consider the reasons advanced by the *Lisle* court for the requirement of contiguity in annexation agreements. The legislature soundly rejected the *Lisle* court's analysis and decision.

---

the time when the petition for annexation is filed. See 65 ILCS 5/7—1—8 (West 2002).

We do not believe that the legislature has abused its discretion in determining what the interests of the public welfare require and what measures are necessary to secure such interest. The orderly development of municipalities is a matter clearly impacting upon the public health, safety, and welfare. Further, as this court observed in *City of Belleville*, 84 Ill. 2d at 12: "The purpose of the contiguity requirement is to permit the natural and gradual extension of municipal boundaries to areas which 'adjoin one another in a reasonably substantial physical sense.' " That purpose will be met fully, however, at *the time the property is annexed*. Division 15.1 clearly requires contiguity for effective annexation of property. Section 11—15.1—1 provides: "That land may be annexed to the municipality in the manner provided in Article 7 at the time the land is or becomes contiguous to the municipality." 65 ILCS 5/11—15.1—1 (West 2002). Article 7 also requires contiguity of property being annexed. See 65 ILCS 5/7—1—8 (West 2002).

The County expresses strong disagreement with *the timing utilized by the legislature*. The legislature has determined that a municipality may exercise certain jurisdiction over property which is subject to an annexation agreement as of *the time the agreement is entered into*, rather than *the time of annexation*. This is a determination, however, which is best left to the discretion of the legislature in the exercise of its police power. We see no reason to reconsider our decisions in *Meegan*, 52 Ill. 2d 354, and *City of Belleville*, 84 Ill. 2d 1, and to countermand the legislature's determination of the interests of the public welfare.

### III. Statutory Construction

We consider next the County's contention that, by statute, the County, not the Village, has zoning and building code jurisdiction over noncontiguous property in

unincorporated areas. In doing so, we are guided by familiar principles. The fundamental rule of statutory construction is to give effect to the intent of the legislature. *County of Knox*, 188 Ill. 2d at 556; *Stewart v. Industrial Comm'n*, 115 Ill. 2d 337, 341 (1987). The best evidence of legislative intent is the language used in the statute, which must be given its plain and ordinary meaning. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997); *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 194-95 (1992). It is never proper for a court to depart from plain language by reading into the statute exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996); *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). When the statutory language is clear, it must be given effect without resort to other tools of interpretation. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421-22 (2002); *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 220 (1983).

As outlined above, division 15.1 provides that property that is the subject of an annexation agreement is subject to the ordinances, control, and jurisdiction of the municipality. 65 ILCS 5/11—15.1—2.1(a) (West 2002). Ordinarily, cities have no jurisdiction beyond their corporate limits, and municipal ordinances are confined in their application to the territory of the municipality adopting them. *Petterson v. City of Naperville*, 9 Ill. 2d 233, 243 (1956) (citing *Dean Milk Co. v. City of Elgin*, 405 Ill. 204 (1950), and *City of Rockford v. Hey*, 366 Ill. 526 (1937)). However, the legislature may, if it sees fit, confer special extraterritorial powers on municipalities, and when it does so the courts recognize and give effect to them. *Petterson*, 9 Ill. 2d at 243 (legislature could properly grant a municipality exclusive control and jurisdiction over lands located within 1½ miles of the corporate limits of the municipality).

Although section 11—15.1—2.1 is clear and unambiguous, the County argues that the provision cannot be given effect because it conflicts with section 5—1063 of the Counties Code (55 ILCS 5/5—1063 (West 2002)) and section 11—13—1 of the Municipal Code (65 ILCS 5/11—13—1 (West 2002)). Specifically, the County argues that where a county has adopted building code and zoning ordinances, the county has jurisdiction, pursuant to section 5—1063 of the Counties Code and section 11—13—1 of the Municipal Code, over lands located outside the corporate limits of the municipality.

Section 5—1063 of the Counties Code provides in part:

> "For the purpose of promoting and safeguarding the public health, safety, comfort and welfare, a county board may prescribe by resolution or ordinance reasonable rules and regulations (a) governing the construction and alteration of all buildings *** where such buildings *** are located outside the limits of cities, villages and incorporated towns, but excluding those for agricultural purposes on farms including farm residences ***." 55 ILCS 5/5—1063 (West 2002).

Thus, section 5—1063 grants building code jurisdiction to counties over nonagricultural buildings located outside the territorial limits of municipalities. The County has adopted building code ordinances pursuant to the statute.

Pursuant to section 11—13—1 of the Municipal Code, a municipality may exercise zoning power within the corporate limits of the municipality and within contiguous territory not more than 1½ miles beyond the corporate limits of the municipality if the contiguous territory is not included within any other municipality. 65 ILCS 5/11—13—1 (West 2002). Section 11—13—1 specifically provides, however, that a municipality may not exercise zoning power outside the corporate limits of the municipality if the county in which the municipality is situated has adopted "An Act in relation to county zoning" (55 ILCS 5/5—12001 *et seq.* (West 2002)). In the

present case, it is undisputed that the County has adopted "An Act in relation to county zoning." Section 11—13—1 therefore limits the Village's right to exercise zoning power over lands situated outside the Village's corporate limits.

We agree with the County that division 15.1 conflicts with section 5—1063 of the Counties Code and section 11—13—1 of the Municipal Code. Further, the legislative enactments do not specifically state that division 15.1 is an exception to either section 5—1063 or section 11—13—1. In determining which act is controlling, two rules of statutory construction are helpful. First, when two statutes appear to be in conflict, the one which was enacted later should prevail, as a later expression of legislative intent. *State of Illinois v. Mikusch*, 138 Ill. 2d 242, 254 (1990). The legislature amended division 15.1, effective January 1, 1991, to clarify that property that is the subject of an annexation agreement is subject to the ordinances, control, and jurisdiction of the municipality. This amendment postdates the provision of section 5—1063 authorizing a county board to prescribe reasonable rules and regulations governing the construction and alteration of buildings and structures located outside city limits. See Ill. Rev. Stat. 1971, ch. 34, par. 422. The amendment also postdates the provision of section 11—13—1 limiting a municipality's right to exercise zoning power where the county has adopted "An Act in relation to county zoning." See Ill. Rev. Stat. 1971, ch. 24, par. 11—13—1. By application of this statutory rule of construction, division 15.1 prevails as the later expression of legislative intent.

Second, where there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail. *Hernon*, 149 Ill. 2d at 195, quoting *Bowes v. City of Chicago*,

3 Ill. 2d 175, 205 (1954); *Stone v. Department of Employment Security Board of Review*, 151 Ill. 2d 257, 266 (1992). Section 5—1063 of the Counties Code and section 11—13—1 of the Municipal Code apply to zoning and building code regulation of properties in general. Division 15.1 applies where a municipality has entered into an annexation agreement with the owner of properties located outside the boundaries of the municipality. Division 15.1 details the procedures to be followed in entering into the annexation agreement; what may be included in the agreement, the methods of enforcement of the agreement, and the period of enforcement of the agreement. Division 15.1 then provides that property that is the subject of an annexation agreement is subject to the ordinances, control, and jurisdiction of the municipality. We are of the opinion that division 15.1 is the more specific legislation and must prevail where the property at issue is the subject of an annexation agreement.

Even if we were to find division 15.1 the more general statute, our conclusion would not change. As discussed above, the *Lisle* court invalidated an annexation agreement that allowed a municipality to exercise its police powers over a noncontiguous tract of property. The legislature specifically rejected the *Lisle* decision, providing by amendment that "[p]roperty that is the subject of an annexation agreement *** is subject to the ordinances, control, and jurisdiction of the annexing municipality *in all respects the same as property that lies within the annexing municipality's corporate limits.*" (Emphasis added.) 65 ILCS 5/11—15.1—2.1(a) (West 2002). It is a rule of statutory construction that a more specific statute does not control where the legislature intended to make the general act controlling. *Stone*, 151 Ill. 2d at 266, quoting 2B N. Singer, Sutherland on Statutory Construction § 51.05, at 174 (5th ed. 1992). In light of the legislature's reaction to the appellate court decision in *Lisle*, there

can be no doubt of the legislature's intent to grant jurisdiction to municipalities over properties located in unincorporated areas which are subject to annexation agreements.

### IV. Summary Judgment

In the alternative, the County argues that the Village was not entitled to summary judgment because there was a material issue of fact, precluding entry of summary judgment. In particular, the County maintains that the Village failed to establish the existence of the annexation agreements and, consequently, failed to establish its right to exercise zoning and building code jurisdiction over lands in unincorporated areas. We disagree.

The County initiated contact with the property owners and the Village by correspondence noting that the property owners had begun construction in areas "pre-annexed" to the Village, without first obtaining permits from the County. The County submitted a map to the circuit court showing the locations of the "pre-annexed" areas. Lastly, pursuant to a stipulation between the County and the Village, property owners and developers affected by this dispute obtained building permits from the County. The fees paid for the permits were placed in an escrow fund administered by the county clerk of Sangamon County.

Importantly, the issues that the courts have considered in this case are uniquely issues of law. Resolution of this case turned on whether division 15.1 was either special legislation or an improper exercise of the police power. In the absence of a constitutional violation, the question became one of statutory construction, namely, whether the County or the Village has jurisdiction of properties subject to annexation agreements. The interpretation of a statute is a matter of law for the court and appropriate for summary judgment. *County of Knox*, 188 Ill. 2d at 551.

## V. Declaratory Judgment

In a related issue, the County argues that the trial court rendered an abstract judgment which will not terminate the dispute between the parties. The County claims there are no specific lands covered by annexation agreements to which the judgment can apply. Again, we disagree. The County provided the circuit court with a map showing the locations of areas "pre-annexed" to the Village. The County also issued permits and charged fees to property owners and developers in areas "pre-annexed" to the Village. These fees, deposited into an escrow account, amounted to $17,836.99 as of the conclusion of the proceedings in the circuit court. At the very least, the circuit court's ruling affected the zoning and building code jurisdiction of the Village with respect to the properties whose owners and developers had obtained permits from, and paid fees to, the County. The court's ruling was not an abstract decision.

## CONCLUSION

For the aforementioned reasons, we affirm the judgment of the appellate court.

*Appellate court judgment affirmed.*