# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Carr v. Koch*, 2011 IL App (4th) 110117

---

| | |
|---|---|
| Appellate Court Caption | PAUL CARR and RON NEWELL, Plaintiffs-Appellants, v. CHRISTOPHER KOCH, State Superintendent of Education; THE STATE BOARD OF EDUCATION; and PATRICK J. QUINN, Governor of the State of Illinois, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0117 |
| Argued<br>Filed | September 21, 2011<br>October 28, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An action seeking a declaration that the Illinois education funding system found in section18-8.05 of the School Code violated the equal protection clause in the Illinois Constitution was properly dismissed on the grounds that plaintiffs' claim of higher tax rates was not fairly traceable to defendant's actions and that plaintiffs lacked standing. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No.10-MR-169; the Hon. Patrick J. Londrigan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Donald M. Craven, of Donald M. Craven, P.C., of Springfield, Scott R. Lassar, Tacy F. Flint (argued), and Jason M. Adler, all of Sidley Austin LLP, and Alexander Polikoff, of Business & Professional People for Public Interest, both of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Berks (argued), Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE TURNER delivered the judgment of the court, with opinion.

Justices Appleton and Cook concurred in the judgment and opinion.

## OPINION

¶ 1    In March 2010, plaintiffs, Paul Carr and Ron Newell, filed a complaint against defendants, Christopher Koch, State Superintendent of Education; the State Board of Education (Board); and Patrick J. Quinn, Governor of the State of Illinois, asking the trial court to declare the Illinois education funding system found in section 18-8.05 of the School Code (105 ILCS 5/18-8.05 (West 2010)) in violation of the equal-protection clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). In January 2011, the trial court granted defendants' motion to dismiss.

¶ 2    On appeal, plaintiffs argue the trial court erred in granting defendants' motion to dismiss. We affirm.

¶ 3                     I. BACKGROUND

¶ 4    Initially, a review of the Illinois education funding system and the Illinois Learning Standards is necessary to put plaintiffs' complaint in the proper context for this appeal.

¶ 5                A. Illinois Education Funding

¶ 6    Public schools in Illinois receive revenue from both local and state sources. The principal sources of local revenue for education are (1) the corporate personal property replacement tax (35 ILCS 5/201(c), (d) (West 2010)) and the property tax revenues imposed and collected by local school districts (105 ILCS 5/17-2 (West 2010)). The State supplements local education funds with state money under three broad programs, including (1) general state financial aid (105 ILCS 5/18-8.05(A)(1) (West 2010)), (2) supplemental general state financial aid (105 ILCS 5/18-8.05(A)(2) (West 2010)), and (3) categorical grants for specific purposes such as preschool programs (105 ILCS 5/2-3.71 (West 2010)) and driver-education

programs (105 ILCS 5/27-24.4 (West 2010)).

¶ 7    General state financial aid is calculated in accordance with a formula codified in section 18-8.05 of the School Code (105 ILCS 5/18-8.05 (West 2010)). Each year, the State establishes a dollar figure "representing the minimum level of per pupil financial support that should be available to provide for the basic education of each pupil." 105 ILCS 5/18-8.05(B)(1) (West 2010). This figure is called the "Foundation Level." For the 2009-10 school year, the State set the Foundation Level at $6,119. 105 ILCS 5/18-8.05(B)(3) (West 2010).

¶ 8    Because general state financial aid is intended to supplement local resources devoted to public education, the State calculates what percentage of the Foundation Level each school district can achieve without state aid. This is done by identifying each district's "Available Local Resources," which "shall include a calculated dollar amount representing local school district revenues from local property taxes and from Corporate Personal Property Replacement Taxes, expressed on the basis of pupils in Average Daily Attendance." 105 ILCS 5/18-8.05(D)(1) (West 2010). In determining local property tax revenue, the Board multiplies the equalized assessed value of all taxable property in each school district by 3% for districts that include both elementary and high schools, 2.3% for districts with only elementary and middle schools, and 1.05% for districts with only a high school. 105 ILCS 5/18-8.05(D)(3) (West 2010). That number is then divided by the district's average daily attendance figure. The corporate personal property replacement tax divided by the average daily attendance figure is added to the local property tax revenues per pupil to determine the district's Available Local Resources. 105 ILCS 5/18-8.05(D)(4) (West 2010).

¶ 9    If a school district's Available Local Resources per pupil are less than 93% of the Foundation Level, the State provides general state financial aid sufficient to lift the district to Foundation Level funding for each of its students. 105 ILCS 5/18-8.05(E)(2) (West 2010). If Available Local Resources are between 93% and 175% of the Foundation Level, the State provides general state financial aid on a sliding scale from 7% of the Foundation Level per student to school districts with Available Local Resources closer to 93% and 5% of the Foundation Level per student to districts with Available Local Resources close to 175% of the Foundation Level. 105 ILCS 5/18-8.05(E)(3) (West 2010). If Available Local Resources exceed 175% of the Foundation Level, the State provides general financial aid in the form of a grant of $218 per pupil. 105 ILCS 5/18-8.05(E)(4) (West 2010).

¶ 10                    B. State and Federal Learning Standards

¶ 11    Adopted by the Board in 1997, the Illinois Learning Standards "define what all students in all Illinois public schools should know and be able to do in the seven core areas as a result of their elementary and secondary schooling." http://www.isbe.state.il.us/ils/ (last visited Oct. 3, 2011). The seven core areas include English language arts, mathematics, science, social science, physical development and health, fine arts, and foreign language. http://www.isbe.state.il.us/ils/pdf/ils_introduction.pdf (last visited October 3, 2011). The standards apply to all students because "[m]aintaining high expectations for all students is a component of fairness in education." http://www.isbe.state.il.us./ils/pdf/standards_qa.pdf (last visited Oct. 3, 2011).

¶ 12    "The Illinois Learning Standards give schools an opportunity to judge the extent to which their local objectives actually meet or exceed the state goals." *Id.* In aligning the curriculum with the Illinois Learning Standards, schools "will discover that many other things that are important to the education of their students are left up to local discretion" and thus "will need to decide which local outcomes/standards are important to their students and continue to teach and assess those as well." *Id.* The standards are not a state curriculum, but their "purpose is to clearly define essential knowledge and skills that students should have as a result of their schooling." *Id.*

¶ 13    The State has also developed the Illinois Standards Achievement Test (ISAT), which measures individual elementary student achievement relative to the Illinois Learning Standards, and the Prairie State Achievement Examination (PSAE), which measures the achievement of eleventh-grade students in reading, mathematics, science, and writing. In addition, the federal government implemented the No Child Left Behind Act in January 2002, requiring states to establish and enforce statewide learning standards and to achieve adequate yearly progress toward these standards, as measured by federally approved standardized tests. See 20 U.S.C. § 6311 (Supp. II 2002).

¶ 14    School districts that fail to make progress toward achieving the standards are required to "prepare a revised School Improvement Plan" setting forth the district's expectations for improving student performance. 105 ILCS 5/2-3.25d(a) (West 2010). Also, school districts that fail to make reasonable efforts to implement an improvement plan may suffer the loss of state funds or be subject to other state intervention. 105 ILCS 5/2-3.25f(a), (b) (West 2010).

¶ 15                              C. Plaintiffs' Complaint

¶ 16    In March 2010, plaintiffs filed a complaint against defendants, asking the trial court to find the Illinois education funding system found in section 18-8.05 of the School Code is in violation of the equal-protection clause of the Illinois Constitution. The complaint alleged plaintiff Paul Carr owned property in Homewood-Flossmoor Consolidated High School District No. 233 and paid annual school property taxes on that property in 2006 at a rate of 4.10%. The high-school district in which Carr owned property generated "instructional expenditures per pupil of $7,292" in the 2007-08 school year. Plaintiff Ron Newell owned property in Cairo Unified School District No. 1 and paid annual school property taxes on that property in 2006 at a rate of 6.95%. The district generated instructional expenditures per student of $6,192 in the 2007-08 school year.

¶ 17    Plaintiffs claimed the State's education funding system has the effect of requiring taxpayers in school districts with low property values to pay property taxes to fund local public schools at a higher rate than similarly situated taxpayers–that is, taxpayers owning similarly valued real property–in school districts with high property values. To achieve funding at the Foundation Level, plaintiffs stated property-poor districts are obligated by the state's education funding system to impose local taxes at rates significantly higher than property-rich districts receiving a flat grant. Even then, the State provides an additional $218 per pupil to the districts receiving the flat grant.

¶ 18    Plaintiffs argued the unequal treatment is not rationally related to any legitimate legislative purpose. Plaintiffs cited *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 672 N.E.2d 1178 (1996), where the Illinois Supreme Court found disparities in education funding between school districts were rationally related to the legitimate legislative interest of maintaining local control of education. Since *Edgar* was decided, plaintiffs claim the General Assembly has greatly increased state control of public education by prescribing statewide learning standards and utilizing standardized tests like the ISAT and PSAE, whereby "the State now exercises effective control over the core education functions of Illinois public schools." Plaintiffs argued that since core education functions in Illinois public schools are no longer locally controlled, any rational basis for the unequal tax burdens created by the education funding system that may have existed at the time of *Edgar* no longer exists. Thus, plaintiffs claimed the unequal tax burdens violated the equal-protection clause of the Illinois Constitution.

¶ 19                    D. Defendants' Motion To Dismiss

¶ 20    In May 2010, defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619.1 (West 2010)). As grounds for dismissal under section 2-619 (735 ILCS 5/2-619 (West 2010)), defendants argued plaintiffs lacked standing to challenge the Illinois school funding system and also argued the Board must be dismissed from the lawsuit for lack of subject-matter jurisdiction based on sovereign immunity. Under section 2-615 (735 ILCS 5/2-615 (West 2010)), defendants argued the complaint must be dismissed for failure to state a claim under the equal-protection clause based on the supreme court's decision in *Edgar*. Further, defendants contended "the Illinois Learning Standards do not eliminate local control of schools or the ability to tax property at different rates," and funding of public education is a matter for the legislature, not the courts, to address.

¶ 21                    E. The Trial Court's Order

¶ 22    In January 2011, the trial court granted defendants' motion to dismiss. The court found the *Edgar* decision controlled, noting the supreme court concluded "the legislature could rationally allow local control over decisions as to how much funding is allocated to schools from local taxpayers and local control over spending decisions." The court also found plaintiffs lacked standing to bring their action because the variations in assessment rates were the result of local decision making and could not be firmly traceable to defendants. The court held the action against the Board was barred by the State Lawsuit Immunity Act (745 ILCS 5/0.01 through 1.5 (West 2010)). This appeal followed.

¶ 23                    II. ANALYSIS

¶ 24                    A. Standard of Review

¶ 25    A motion under section 2-619.1 of the Procedure Code allows a party to "combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings

with a section 2-619 motion to dismiss based upon certain defects or defenses." *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164, 788 N.E.2d 740, 747 (2003). On appeal, the trial court's dismissal of a complaint under section 2-619.1 is reviewed *de novo. Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402, 911 N.E.2d 1049, 1052 (2009).

¶ 26                                   B. Standing

¶ 27     Plaintiffs argue they have standing to bring this lawsuit. The State argues plaintiffs lack standing to challenge the education funding scheme because any injury cannot be fairly traceable to defendants' actions.

¶ 28     "The doctrine of standing is intended to assure that issues are raised only by those parties with a real interest in the outcome of the controversy." *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 206, 724 N.E.2d 914, 918 (2000). To have standing to challenge a statute's constitutionality, "one must have sustained or be in immediate danger of sustaining a direct injury as a result of enforcement of the challenged statute." *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23, 809 N.E.2d 1240, 1243 (2004). "The claimed injury may be actual or threatened, and it must be (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Glisson v. City of Marion*, 188 Ill. 2d 211, 221, 720 N.E.2d 1034, 1040 (1999). "In the context of a declaratory judgment action, 'there must be an actual controversy between adverse parties, with the party requesting the declaration possessing some personal claim, status, or right which is capable of being affected by the grant of such relief.' " *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 420, 837 N.E.2d 29, 40 (2005) (quoting *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 493, 524 N.E.2d 561, 575 (1988)).

¶ 29     Section 18-8.05(B)(1) of the School Code states, "each school district is assumed to exert a sufficient local taxing effort such that, in combination with the aggregate of general State financial aid provided the district, an aggregate of State and local resources are available to meet the basic education needs of pupils in the district." 105 ILCS 5/18-8.05(B)(1) (West 2010). However, "[s]chool districts are not required to exert a minimum Operating Tax Rate in order to qualify for assistance under this Section." 105 ILCS 5/18-8.05(A)(4) (West 2010). Thus, the amount the State provides in financial aid does not depend on a district's actual tax rates. A school district is free to impose lower or higher tax rates than those used to calculate Available Local Resources without any impact on its state funding.

¶ 30     The allegations in plaintiffs' complaint confirm the tax rates imposed were not obligated by the state funding scheme. The Homewood-Flossmoor high-school district imposed a property tax rate of 4.10%, while the Cairo Unified School District imposed a property tax rate of 6.95%. These rates are more than double the rates the State used to calculate its contributions to those districts. See 105 ILCS 5/18-8.05(D)(3) (West 2010) (Available Local Resources based on tax rate of 1.05% for high-school district and 3% for combined elementary and high-school district). The State neither rewarded nor punished plaintiffs' school districts for exceeding the statutory tax rates on which the State based its aid

calculation. Thus, the State did nothing to induce the school districts' decision to tax at 4.10% and 6.95%. Instead, it can be assumed the school districts taxed at these levels to provide the resources deemed necessary or desirable in their respective schools. Any injury incurred by higher tax rates cannot be fairly traceable to defendants' actions. Moreover, a declaration that the State's funding scheme is unconstitutional would not redress plaintiffs' claimed injury–that of higher tax rates–but would more than likely result in higher property tax rates to compensate for the loss of state aid.

¶ 31 In their complaint, plaintiffs also argue the State has abandoned local control of schools in favor of centralized decision making by the Board and, as a result, property-poor districts have no choice but to maintain high tax rates to avoid state-prescribed penalties. We find plaintiffs' allegations insufficient to confer standing in this case. "[T]o have standing to bring a declaratory judgment action challenging the validity of a statute, one must have sustained, or be in immediate danger of sustaining, a direct injury as a result of enforcement of the statute." *Village of Chatham*, 216 Ill. 2d at 420, 837 N.E.2d at 40.

¶ 32 In the case *sub judice*, plaintiffs do not allege students in their school districts have failed to meet the State's performance standards. Nor do they allege the State has imposed, or threatened, any of the allegedly "draconian" remedies available to save failing school districts. Also, even if plaintiffs did make such allegations, it is not the funding formula that authorizes the State to threaten such penalties but sections 2-3.25d and 2-3.25f, which plaintiffs have not challenged. Plaintiffs' claim that they are being treated differently from similarly situated taxpayers in property-rich districts because of the combined effect of the State's funding scheme and the Illinois Learning Standards fails to state a direct or threatened injury caused by the statute. Because plaintiffs have not alleged an actual or threatened injury, and since their claim of higher tax rates cannot be fairly traceable to defendants' actions, they lack standing to challenge section 18-8.05 of the School Code. Because of this finding, we find the trial court did not err in granting defendants' motion to dismiss and we therefore need not address plaintiffs' remaining claims of error.

¶ 33                                III. CONCLUSION
¶ 34 For the reasons stated, we affirm the trial court's judgment.

¶ 35 Affirmed.