No. 3--07--0553

_____

Filed January 29, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

_____

| | | |
|---|---|---|
| In re APPOINTMENT OF SPECIAL PROSECUTOR | ) ) ) ) ) | Appeal from the Circuit Court of Knox County.<br><br>No. 07--MR--28 |
| (The People ex rel. John T. Pepmeyer, as State's Attorney of Knox County, Petitioner-Appellant). | ) ) ) ) ) | Honorable Edward R. Danner, Judge, Presiding. |

_____

JUSTICE BURKE delivered the opinion of the court:

Upon taking office, Knox County State's Attorney John T. Pepmeyer began investigating alleged "improprieties" committed by former and current employees of the Knox County State's Attorney's office and the Knox County sheriff's office. Among those Pepmeyer investigated were Knox County Assistant State's Attorneys Dean Stone and Michael Kraycinovich. Stone and Kraycinovich responded with their own investigation of allegations that, as State's Attorney, Pepmeyer had sexually harassed female employees, created a hostile work environment, and mishandled files.

Stone and Kraycinovich petitioned the circuit court of Knox County to appoint a special prosecutor to investigate the allegations against Pepmeyer, and the court assigned the case No. 07--MR--25. See 55 ILCS 5/3--9008 (West 2006). Pepmeyer petitioned for a special prosecutor for his own investigation, and the case was assigned No. 07--MR--28. The circuit court consolidated the two cases and appointed the Illinois Attorney General (AG) as a special prosecutor on both petitions.

Subsequent motions led the court to modify the appointment. On July 10, 2007, the court left the AG to investigate Pepmeyer but appointed former McDonough County State's Attorney William Poncin as a special prosecutor to investigate wrongdoing by "other Knox County public officials."

Pepmeyer appeals the July 10 order, arguing that Poncin's powers as special prosecutor are too broad and infringe on Pepmeyer's authority as State's Attorney. During the pendency of this appeal, the AG concluded that there is no basis to investigate Pepmeyer, and the circuit court terminated the AG's appointment.

Pepmeyer and Poncin conferred with the Office of the State's Attorneys Appellate Prosecutor (SAAP), which agreed to act as a special prosecutor. Pepmeyer, Poncin, and SAAP purportedly reached an agreement to divide their investigatory powers. Pepmeyer and Poncin have jointly filed in this court a "Motion for Conditional Remand," asking us to remand the cause to the circuit court with directions to enter a proposed order setting forth the agreement.

Stone and Kraycinovich object, arguing that Pepmeyer would have a conflict of interest under the proposed order. Pepmeyer responds that Stone and Kraycinovich lack standing in this appeal because any standing they might have had ended when the AG appointment on their petition was terminated.

We hold that Stone and Kraycinovich lack standing because they have failed to show an injury to a legally cognizable interest. However, we deny Pepmeyer's motion for conditional remand, because a remand to the circuit court with directions to enter the proposed order would amount to an exercise of supervisory authority, which the appellate court lacks. Nevertheless, we reverse the July 10, 2007, order because it is too broad. We remand the cause to the circuit court for

reconsideration of the scope of the special prosecutors' authority. On remand, Pepmeyer is free to propose his arrangement with Poncin and SAAP, but we emphasize that the circuit court has discretion in modifying the appointment to ensure the resolution of any conflicts under section 3--9008 of the Counties Code (55 ILCS 5/3--9008 (West 2006)).

## BACKGROUND

Section 3--9005 of the Counties Code, which governs the powers and duties of the State's Attorney, provides that the State's Attorney shall "commence and prosecute all actions, suits, indictments[,] and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned." 55 ILCS 5/3--9005(a)(1) (West 2006). However, section 3--9008 prescribes the appointment of a special prosecutor to act in the place of the State's Attorney under certain circumstances. 55 ILCS 5/3--9008 (West 2006). Section 3--9008 provides, in relevant part, that, "[w]henever the State's attorney *** is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding." 55 ILCS 5/3--9008 (West 2006).

Section 3--9008 is intended to " 'prevent any influence upon the discharge of the duties of the State's Attorney by reason of personal interest.' " In re Harris, 335 Ill. App. 3d 517, 520 (2002), quoting People v. Morley, 287 Ill. App. 3d 499, 503-04 (1997). The term " 'interested' " as used in section 3--9008 means that " 'the State's Attorney must be interested as (1) a private individual; or (2) a party to the action.' " People v. Lanigan, 353 Ill. App. 3d 422, 430 (2004), quoting McDonald v. County Board, 146 Ill. App. 3d 1051, 1057 (1986).

A. The Two Petitions for Special Prosecutors

Pepmeyer took office on January 12, 2007, and, soon thereafter, he began investigating allegations of wrongdoing by Stone and Kraycinovich and others in the State's Attorney's office and the sheriff's office. On March 15, 2007, Stone and Kraycinovich petitioned for the appointment of a special prosecutor to investigate Pepmeyer, and six days later Pepmeyer terminated their employment. On March 22, 2007, Stone and Kraycinovich amended their petition to reflect that they were petitioning as "citizens and residents of Knox County" rather than as assistant State's Attorneys. Pepmeyer filed his own petition for the appointment of a special prosecutor, and the court ruled on both petitions that day.

Stone and Kraycinovich stated in their petition that, because Pepmeyer had been accused of wrongdoing, he was interested in the proceeding, which was his duty to prosecute as State's Attorney. See 55 ILCS 5/3--9008 (West 2006). Stone stated that he had consulted with the AG's office, which had agreed to serve as a special prosecutor for representing the State in the investigation and possible prosecution of Pepmeyer.

Pepmeyer stated in his petition that he had investigated the State's Attorney's office and had "personally discovered numerous improprieties" that may constitute criminal offenses. Pepmeyer asked the circuit court to appoint SAAP as a special prosecutor or as a special assistant State's Attorney for investigating and potentially prosecuting the alleged improprieties.

The circuit court consolidated the two cases for the purpose of the hearing. The court found it necessary to appoint a special prosecutor pursuant to section 3--9008 of the Counties Code because the investigation involved civil or criminal wrongdoing in the State's Attorney's office and Pepmeyer, as the State's Attorney, was thus interested in the proceeding. The court disposed of both petitions

by appointing the AG as a special prosecutor to investigate the Knox County State's Attorney's office.

## B. Pepmeyer's Motion to Reconsider the Appointment

On April 23, 2007, Pepmeyer filed a motion to reconsider the appointment, arguing that the order was incomplete because it restricted the AG to investigating the State's Attorney's office. Pepmeyer cited a conference call with three assistant AGs who told him that "the Knox County State's Attorney was the sole and only focus of that office's investigation by virtue of [the March 27, 2007, order]." Pepmeyer further asserted that investigations conducted by the Illinois State Police, the special investigators of the Knox County State's Attorney's office, and the Federal Bureau of Investigation (FBI) revealed potential criminal wrongdoing by current or former employees of the State's Attorney's office, the sheriff's office, and other Knox County offices. Also, Pepmeyer stated that "the actions of at least two sitting judges of the Ninth Circuit may require them to testify as witnesses," and, therefore, the matter should be removed from the Ninth Judicial Circuit. Finally, Pepmeyer implied that the AG had a conflict of interest in that Paul Mangieri, the former Knox County State's Attorney, "has close ties to the Attorney General's father," Mike Madigan.

In the motion to reconsider, Pepmeyer asked for (1) the current judge's removal from the case, (2) the appointment of a judge from outside the Ninth Judicial Circuit to hear the motion to reconsider; (3) the appointment of a special prosecutor other than the AG, such as another State's Attorney or a retired judge; and (4) an order defining "the scope and parameters of the investigation to include all members of the Knox County State's Attorney's Office, both past and present, as well as members of the Knox County Sheriff's Office, both past and present, and other various County employees."

On May 9, 2007, Stone and Kraycinovich, as well as Knox County Sheriff James K. Thompson, filed motions to enjoin Pepmeyer from investigating matters assigned to the AG in her role as special prosecutor. On May 18, 2007, the circuit court entered a written order directing Pepmeyer to "cease and desist" from conducting investigations that "in any way involve *** the Knox County State's Attorney's Office, its employees, past employees, past State's Attorneys, present and past Assistant State's Attorneys, agents, [Sheriff Thompson], or any other matters that in any way otherwise relate to said office, the conduct of past and present employees, State's Attorneys or Assistant State's Attorneys." The order also formally consolidated the two cases.

On June 1, 2007, Pepmeyer supplemented his motion to reconsider with a motion seeking (1) the appointment of a special prosecutor other than the AG and (2) clarification of the scope of the responsibility and authority of the special prosecutor.

On June 15, 2007, Pepmeyer filed a brief challenging the standing of Stone and Kraycinovich in both cases. Pepmeyer argued that they lacked standing to participate in the motion to reconsider in case No. 07--MR--28, because the underlying petition was filed by Pepmeyer, not Stone and Kraycinovich. Pepmeyer argued that Stone and Kraycinovich had only "limited standing" to file the petition in case No. 07--MR--25, because their roles were limited to providing the court with a legal or factual basis to support the petition and, once that task was complete, they had "no further role" in the matter. Pepmeyer did not address his standing in either case.

Also on June 15, 2007, Stone and Kraycinovich filed a brief arguing that Pepmeyer lacked standing to move for reconsideration of the appointment in either case. They argued that Pepmeyer could not prove injury to a legally cognizable interest or legal benefit from his appearance in case

No. 07--MR--25. They also argued that Pepmeyer had a conflict in case No. 07--MR--28 and that the conflict barred him from moving for reconsideration of the appointment.

Stone and Kraycinovich argued that they had standing in both cases. They argued that they had standing in case No. 07--MR--25 because they were the petitioners in that matter. They argued also that they had standing to seek a contempt finding in case No. 07--MR--28 because they were victimized by Pepmeyer's alleged violation of the court's previous order barring him from resuming his investigation.

On June 28, 2007, the circuit court entered a written order finding that Stone and Kraycinovich had standing in case Nos. 07--MR--25 and 07--MR--28. The court commented orally that it was "giving standing to Mr. Stone and Mr. Kraycinovich to take a position on the motion for reconsideration filed by State's Attorney Pepmeyer." The court emphasized that it intended to "maintain the status quo" regarding discovery until the motion to reconsider was heard.

### C. Modification of the Appointment

On July 10, 2007, the circuit court modified the appointment. The court ruled that the AG would continue serving as a special prosecutor to investigate allegations of misconduct against Pepmeyer, "including but not limited to any actions of sexual harassment, official misconduct, mishandling of files, or any other criminal matters that are a result of the [AG's] investigation pursuant to [the] appointment."

However, the court appointed Poncin as a special prosecutor to "investigate claims of possible wrongdoing by other Knox County public officials, including former State's Attorney Paul Mangieri, current Knox County Sheriff Thompson, as well as current and former employees of the Knox County State's Attorney and Sheriff's Offices." The court specifically authorized Poncin to

"investigate any incidents of criminal wrongdoing performed by Jennifer Brown, Theresa Cummings, Constance Griffith, <u>Mike Kraycinovich</u>, <u>Dean Stone</u>, Tracy Jones, and any other persons who formerly or currently work in the Knox County State's Attorney's Office during the appropriate periods of [the] statute of limitations." (Emphasis added.) The incidents to be investigated include, but are not limited to, the filing of false reports, obstruction of justice, and official misconduct.

The court also ruled that Poncin "is authorized to investigate, and, if necessary, prosecute any other incidents of possible criminal wrongdoing by current or former members of the Knox County Sheriff's Department or the Knox County State's Attorney's Office that are revealed during the course of his investigation under [the] appointment."

The AG and Poncin were granted the same power and authority that the Knox County State's Attorney would have, such as convening a grand jury. Finally, the court stated that "Pepmeyer is enjoined and prohibited from continuing with an investigation through the Knox County State's Attorney's Office into those people mentioned [in the July 10, 2007, order], including Dean Stone and Mike Kraycinovich."

D. Appeal

On August 9, 2007, Pepmeyer filed a notice of appeal from the July 10, 2007, order. On August 5, 2008, the supreme court assigned the appeal to this court. During the pendency of the appeal, the AG concluded that there is no basis to investigate Pepmeyer, and the circuit court terminated the AG's appointment in case No. 07--MR--25.

In his opening appellate brief, Pepmeyer advocates the reversal of the July 10, 2007, order, on the ground that there is no factual or legal basis for granting such broad authority to Poncin as a special prosecutor. Pepmeyer argues that Poncin should not have the authority to investigate and

prosecute all incidents of possible wrongdoing by current or former public officials and employees of Knox County.

On February 7, 2008, Pepmeyer filed his reply brief, attached to which is a "Motion for Conditional Remand" filed jointly by Pepmeyer and Poncin. The motion was ordered to be taken with the case. In the motion, Pepmeyer and Poncin explain that SAAP has agreed to serve as a special prosecutor and that Pepmeyer, Poncin, and SAAP have reached an agreement that would define the respective authority of each. Pepmeyer asks us to remand the cause to the circuit court with directions to enter the proposed order containing the agreement. The motion is unclear as to whether Pepmeyer still seeks reversal of the July 10, 2007, order or whether he wants his appeal dismissed.

The four-page proposed order would modify the July 10, 2007, order by defining the authority of Poncin and SAAP to act as special prosecutors. The proposed order would enjoin Pepmeyer from investigating matters assigned to Poncin and SAAP, but Pepmeyer otherwise would retain the authority of the office of the State's Attorney. The proposed order provides that the investigations would be limited by the applicable statutes of limitations. It also provides that, within the scope of their appointments, Poncin and SAAP "shall have the same power and authority that the Knox County State's Attorney would have in relation to such cause or proceedings, including but not limited to, convening a grand jury, if deemed necessary."

Specifically, the proposed order would authorize Poncin to investigate "[a]ny incidents, allegations or claims of criminal wrongdoing involving Jennifer Brown, Theresa Cummings, Constance Griffith, Mike Kraycinovich, Dean Stone, [and] Tracy Jones during the period of their respective employments at the Knox County State's Attorney's Office, including, but not limited to,

the filing of false reports, obstruction of justice and official misconduct." (Emphasis added.) Poncin would also be authorized to investigate "[a]ny incidents, allegations, or claims of criminal wrongdoing prior to July 10, 2007, involving improper contact or fraternization between Jennifer Brown and inmates being housed at the Knox County Jail including, but not limited to, improper sexual relations between inmates and custodial staff, the filing of false reports, obstruction of justice and official misconduct, and specifically including any involvement in such incidents or claims by former Knox County Sheriff James Thompson, former State's Attorney Paul Mangieri, and current or former employees of the Knox County jail and Knox County State's Attorney's Office."

The proposed order also would appoint SAAP as the special prosecutor charged with investigating any incidents, allegations, or claims of criminal wrongdoing involving expenditures from the Knox County State's Attorney's office drug forfeiture fund while Mangieri was State's Attorney. SAAP would also investigate wrongdoing disclosed by the Knox County Board's ongoing special forensic audit, which pertains to "all accounts of the Knox County State's Attorney's Office and Knox County Sheriff's Office." The Director of SAAP would designate one or more of the agency's attorneys to serve as the special prosecutor, and those conducting the special forensic audit would be asked to cooperate with SAAP.

Stone and Kraycinovich have filed a response brief and an objection to Pepmeyer's motion, and the objection was ordered to be taken with the case. Pepmeyer filed a motion for leave to reply to the objection, and we grant him leave to file the reply. Pepmeyer argues that Stone and Kraycinovich are not parties to the appeal and lack standing to object or otherwise participate in the appeal.

ANALYSIS

A.  Standing of Stone and Kraycinovich in case No. 07--MR--28

Stone and Kraycinovich argue that they have standing in this appeal because (1) the circuit court's finding in their favor on the issue is "the rule of the case" and (2) Pepmeyer holds "animus" against them, which gives them a legally cognizable interest in the proceedings.  We disagree with both propositions.

Case No. 07--MR--25, which Stone and Kraycinovich initiated, concluded with the termination of the AG's appointment.  However, case No. 07--MR--28, which Pepmeyer initiated, remains and is the subject of this appeal.[1]  The circuit court found that Stone and Kraycinovich had limited standing to be heard on Pepmeyer's motion to reconsider in case No. 07--MR--28, but we reject their argument that the circuit court's decision is the "rule of the case" and may not be reviewed.

Generally, the law-of-the-case doctrine bars relitigation of an issue previously decided in the same case.  Krautsack v. Anderson, 223 Ill. 2d 541, 552 (2006).  However, the law-of-the-case doctrine does not apply to the review of a decision of a lower court.  Krautsack, 223 Ill. 2d at 552.  "Rather, '[s]ince this is the first time this case has been before us, we may review all matters which were properly raised and passed on in the course of the litigation.' "  See Krautsack, 223 Ill. 2d at

---

[1]Stone and Kraycinovich filed a motion to dismiss the appeal, to which they attached a letter from Poncin to the circuit court judge, stating that Poncin completed his investigation on October 7, 2008.  The record does not contain any indication that the circuit court discharged Poncin as special prosecutor.  Initially, Stone and Kraycinovich argued that Pepmeyer's appeal should be dismissed as moot, but they have since moved to withdraw their motion to dismiss.  We have granted the motion to withdraw the motion to dismiss.

552, quoting People v. Triplett, 108 Ill. 2d 463, 488 (1985). Pepmeyer is free to challenge the standing of Stone and Kraycinovich in this appeal, because he raised the issue in the circuit court. See People v. Mayberry, 63 Ill. 2d 1, 6 (1976).

The doctrine of standing ensures that issues are raised only by parties with a real interest in the outcome of the controversy. In Illinois, standing is shown by demonstrating some injury to a legally cognizable interest. Village of Chatham, Illinois v. County of Sangamon, Illinois, 216 Ill. 2d 402, 419 (2005). "The claimed injury, whether actual or threatened, must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the grant of the relief requested." Village of Chatham, 216 Ill. 2d at 419-20.

There is no statutory procedure for alerting a court to the possible need for the appointment of a special prosecutor; the procedure has been developed as a matter of common law. The court's jurisdiction to consider the appointment of a special prosecutor may be invoked (1) by the court upon its own motion; (2) through a petition filed by the State's Attorney; or (3) upon the petition of a private citizen. In re Appointment of a Special State's Attorney, 305 Ill. App. 3d 749, 758 (1999), citing In re Petition of McNulty, 60 Ill. App. 3d 701, 704 (1978). A private citizen petitioning to invoke section 3--9008 need not be a party to the action. In re Appointment of a Special State's Attorney, 305 Ill. App. 3d at 758.

The circuit court dismissed as moot the petition filed by Stone and Kraycinovich in case No. 07--MR--25, and they concede that only the appointment in case No. 07--MR--28 is at issue. Stone and Kraycinovich were not named as parties in case No. 07--MR--28, and they do not allege that Pepmeyer was required to do so.

Furthermore, Stone and Kraycinovich did not try to intervene formally in case No. 07--MR--28. They simply appeared in the joint proceedings and began attacking Pepmeyer's pleadings. The circuit court, in turn, disposed of the motions filed by Stone and Kraycinovich without considering its authority or obligation to do so until Pepmeyer raised the standing issue in the context of his motion to reconsider. While Stone and Kraycinovich might have construed the circuit court's actions as an implicit grant of leave to intervene, section 2--408 of the Code of Civil Procedure expressly requires that a "timely application" be made before intervention can be allowed. 735 ILCS 5/2--408 (West 2006). Therefore, Stone and Kraycinovich have participated in case No. 07--MR--28, including this appeal, as nonparties.

That said, Supreme Court Rule 301 (155 Ill. 2d R. 301) has been construed to allow even a nonparty to appeal. See, e.g., In re Estate of Strong, 194 Ill. App. 3d 219, 225 (1990). "To have standing to bring an appeal, a nonparty must have a ' " 'direct, immediate, and substantial interest in the subject matter, which would be prejudiced by the judgment or benefitted by its reversal.' " ' [Citations.]" Buntrock v. Terra, 348 Ill. App. 3d 875, 885 (2004), quoting Success National Bank v. Specialist Eye Care Center, S.C., 304 Ill. App. 3d 74, 76 (1999). A nonparty "is prejudiced or aggrieved in the legal sense when [a] legal right has been invaded or [a] pecuniary interest is directly, not merely indirectly, affected." People v. Bluett, 166 Ill. App. 3d 593, 598 (1988), citing Metropolitan Sanitary District of Greater Chicago ex rel. O'Keeffe v. Ingram Corp., 85 Ill. App. 3d 859, 865 (1980), rev'd on other grounds, 85 Ill. 2d 458 (1981).

For nonparties like Stone and Kraycinovich to have standing, they are required to have a direct, immediate, and substantial interest in the subject matter, which would be prejudiced by the judgment or benefitted by its reversal. However, Stone and Kraycinovich cannot establish how they

would benefit or suffer prejudice. Knox County has a potential pecuniary interest in the subject matter, as the county would be liable for the expense of a special prosecutor. Stone and Kraycinovich do not appear in the name of the county but are proceeding on their own behalf. Therefore, any pecuniary interest they might have is as citizens of Knox County, which is an indirect interest, at best.

Furthermore, Stone and Kraycinovich have not shown that a "legal right has been invaded" by the appointment such that they have been prejudiced or aggrieved in a legal sense. Like any targets of an investigation, Stone and Kraycinovich are certainly personally interested in the appointment of a special prosecutor to investigate criminal allegations against them. However, any interest they might have against being investigated does not confer standing for the purpose of challenging Pepmeyer's appeal, because their guilt or innocence is not affected by our review of the appointment.

Stone, Kraycinovich, and Pepmeyer agree that the appointment of a special prosecutor is appropriate, so the selection of a particular individual and the scope of his authority are the only matters affected by our review. In other words, this case will affect Stone and Kraycinovich only by determining who is appointed and the breadth of his powers.

We are aware of no authority for the proposition that a private citizen has a right to influence the selection of a special prosecutor charged with investigating the citizen's possible wrongdoing. In fact, Stone and Kraycinovich concede that targets of criminal investigations ordinarily lack standing. We reject their notion that Pepmeyer's alleged animus toward them confers a legally cognizable interest in influencing the investigation into their alleged misconduct. Stone and

Kraycinovich have not identified any legal right that would be invaded by the selection of a particular individual as a special prosecutor.

Our conclusion is supported by Village of Chatham, in which our supreme court further explained the well-settled requirements for standing:

" ' "Actual" [claimed injury] in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.]

The second, and somewhat related requirement, is that the party seeking the declaration must be "interested in the controversy." [Citation.] The word, "interested" does not mean merely having a curiosity about or a concern for the outcome of the controversy. Rather, the party seeking relief must possess a personal claim, status, or right which is capable of being affected. [Citations.] The dispute must, therefore, touch the legal relations of parties who stand in a position adverse to one another.' " (Emphasis added.) Village of Chatham, 216 Ill. 2d at 419-20, quoting Underground Contractors Ass'n, 66 Ill. 2d at 375-76.

Stone and Kraycinovich imply that they would suffer an actual or threatened injury if Pepmeyer resumed an investigation upon the reversal or expiration of the appointment. Stone and Kraycinovich allege a threatened injury in that Pepmeyer has "an admitted conflict and therefore

animus" toward them that could "result in prejudiced criminal investigations conducted against them for his personal gain."

Certainly, any investigation into the conduct of Stone and Kraycinovich would be to their detriment because it would put them at risk of civil or criminal prosecution, regardless of whether Pepmeyer, Poncin, or SAAP conducts the investigation. However, Stone and Kraycinovich's interest is merely a "curiosity about or concern for" the selection of the special prosecutor, because choosing a special prosecutor to investigate one's own conduct is not a "personal claim, status or right." See Village of Chatham, 216 Ill. 2d at 420. Stone and Kraycinovich simply have not established that they have a right to influence the selection of a special prosecutor, and they have not explained how the selection of a particular special prosecutor creates or affects their legal relationship with Pepmeyer.

We hold that Stone and Kraycinovich do not have a direct, immediate, and substantial interest that would be affected by our review of the judgment, because they cannot establish how they would be benefitted or prejudiced by the affirmance or the reversal of the appointment in case No. 07--MR--28. Stone and Kraycinovich cannot possibly claim a legally cognizable right to name the special prosecutor charged with investigating their own possible wrongdoing.[2]

---

[2]We note that the Appellate Court, Fifth District, reached the same conclusion on similar facts in In re Special Prosecutor, 164 Ill. App. 3d 183 (1987), vacated on other grounds, 126 Ill. 2d 208 (1988), a case that both sides rely upon. However, we do not cite In re Special Prosecutor as precedential authority because our supreme court vacated the decision on mootness grounds. See, e.g., Mohanty v. St. John Heart Clinic S.C., 225 Ill. 2d 52, 66 (2006) (an appellate decision vacated by the supreme court "carries no precedential weight").

B. Poncin's Appointment

Next we review Pepmeyer's contention that the circuit court granted Poncin overbroad authority. The July 10, 2007, order gave Poncin the authority (1) to "investigate claims of possible wrongdoing by other Knox County public officials *** as well as current and former employees of the Knox County State's Attorney and Sheriff's Offices"; (2) to "investigate any incidents of criminal wrongdoing performed by *** any other persons who formerly or currently work in the Knox County State's Attorney's Office"; and (3) to "investigate and, if necessary, prosecute any other incidents of possible criminal wrongdoing by current or former members of the Knox County Sheriff's Department or the Knox County State's Attorney's Office that are revealed during the course of his investigation under [the] appointment." The order also enjoined Pepmeyer from investigating "those people mentioned" in the order, including Stone and Kraycinovich. Other than limiting the investigations to the applicable statute of limitations, the order did not specify a date or event that would terminate Poncin's appointment or the injunction against Pepmeyer.

The decision to appoint a special prosecutor under section 3--9008 is within the discretion of the circuit court. Harris, 335 Ill. App. 3d at 520. However, the appointment of a special prosecutor is appropriate only where a petitioner pleads and proves "specific facts" showing that the "State's Attorney would not zealously represent the People" in a "specific case." Baxter v. Peterlin, 156 Ill. App. 3d 564, 566-67 (1987).

Because the appointment of a special prosecutor infringes upon the State's Attorney's exclusive discretion and implicates separation-of-powers principles, the appointment is warranted only if "based upon specific factual allegations of 'interest' within the meaning of section 3--9008." McCall v. Devine, 334 Ill. App. 3d 192, 205 (2002). Speculation and suspicion are insufficient bases

on which to strip a State's Attorney of his authority over a particular case. McCall, 334 Ill. App. 3d at 205. Rather, the petitioner must present sufficient evidence to support a conclusion that the putative personal conflict is so great that it would influence the State's Attorney's discharge of his duties. People v. Arrington, 297 Ill. App. 3d 1, 4 (1998).

The July 10, 2007, order enjoins Pepmeyer from investigating people "mentioned" in the order and the order provides that Poncin may investigate "other Knox County public officials" in addition to several named individuals. Thus, the order effectively bars Pepmeyer from investigating any current or former county officials, and nothing in the order indicates whether he may conduct such an investigation in the future.

However, no one has alleged that Pepmeyer as a private individual or as a party to any proceeding has a personal interest that would preclude him from investigating all current and former county officials. The order's definition of the scope of the subject matter and the duration of Poncin's appointment is vague in that it does not specify an event for terminating the appointment or the injunction. The circuit court should not have issued the appointment without a specific factual basis, and the court should have more clearly limited the appointment to specific matters. Under the circumstances, we view the circuit court's prescription of Poncin's authority to be overbroad and, therefore, an abuse of discretion.

### C. "Motion for Conditional Remand"

In his opening brief, Pepmeyer argued for the reversal of the July 10, 2007, order as overbroad. However, Pepmeyer and Poncin have since filed a joint "Motion For Conditional Remand" in which they advocate a remand to the circuit court with "specific instructions" to enter their proposed order.

The existing order and the proposed order treat Stone and Kraycinovich similarly. However, the proposed order withdraws Poncin's broad authority (1) to "investigate claims of possible wrongdoing by other Knox County public officials" who are not named in the proposed order and (2) to "investigate and, if necessary, prosecute any other incidents of possible criminal wrongdoing by current or former members of the Knox County Sheriff's Department or the Knox County State's Attorney's office that are revealed during the course of his investigation under [the] appointment."

We agree with Pepmeyer that the appointment is overbroad, but we disagree that he, Poncin, and SAAP have the authority to realign their respective powers. The circuit court is vested with the discretion to make that kind of determination under section 3--9008 of the Counties Code. See Morley, 287 Ill. App. 3d at 504.

Pepmeyer and Poncin have not explained what a "conditional remand" is, but we infer that they wish to divest the circuit court of its discretion to fashion an appropriate appointment. They fail to cite any authority for remanding the cause with directions to enter the proposed order, and they ignore issues of the jurisdiction of the appellate court and the circuit court. When the appellate court lacks any statutory, precedential, or constitutional basis for taking a particular action in remanding a cause to the circuit court, such conduct amounts to the use of supervisory authority, which the appellate court does not possess. People v. Whitfield, 228 Ill. 2d 502, 520 (2007). While we have authority to reverse the order, Pepmeyer has not set forth a basis for ordering the circuit court to issue his proposed order. The proposed order contains implicit factual findings that are within the discretion of the circuit court, and the circuit court retains the discretion to make these findings on remand.

We reverse the July 10, 2007, order because it is overbroad, and we remand the cause to the circuit court for reconsideration of the scope of the special prosecutors' authority. In crafting a new order, the circuit court may hear evidence or consider offers of proof focusing on the particular individuals, matters, and time periods to be investigated. The new order should address these parameters as specifically as possible. On remand, Pepmeyer is free to propose his arrangement with Poncin and SAAP, but we emphasize that the circuit court has discretion in modifying the appointment to ensure the resolution of any conflicts under section 3--9008 of the Counties Code.

For the preceding reasons, the judgment of the circuit court of Knox County is reversed and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded with directions.

ZENOFF, P.J., and HUTCHINSON, J., concur.